**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DANTE A. JONES #370-155
        Plaintiff

     v                                   Civil Action No. ELH-12-702

GREG HERSHBERGER, Warden, RCI
BRADLEY WOODFALL, Case Management
  Specialist
ADDIS N. KAMBULE, Librarian
DENISE A. MORGAN, Assistant Warden
ROGER G. MUELLER, Sgt.
KELLY L. UPOLE, Correctional Officer
            Defendants

                      ***

## MEMORANDUM

On March 6, 2012, plaintiff Dante A. Jones, who is presently incarcerated within the Maryland Division of Correction ("DOC") and confined at Eastern Correctional Institution at Westover ("ECI"), filed a civil rights action, later amended, against Greg Hershberger, the Warden of Roxbury Correctional Institution ("RCI"), and five RCI employees.[1]   ECF 1, 5. Plaintiff alleges that his access to the courts was impeded while incarcerated at RCI, his right to due process was adversely impacted as a result of the mishandling by RCI staff of his administrative remedy complaints ("ARPs"), and that he was unlawfully placed on administrative segregation in retaliation for asserting his rights. ECF 1, 5, and 11.[2]  Defendants

_____

[1] In addition to Warden Hershberger, the defendants are Bradley Woodfall, Case Management Specialist II; Addis Kambule, Librarian; Denise Morgan, Assistant Warden; C.O. Sgt. Roger Mueller; and C.O. II Kelly Upole.  The Clerk shall amend the docket to reflect the complete and proper spelling of defendants' names.

[2] As indicated, this case concerns RCI and its personnel.  Plaintiff was transferred from RCI to the Maryland Correctional Institution-Hagerstown ("MCI-H") on or about June 11, 2012. ECF 31, Exhibit 8.  Plaintiff requests injunctive relief seeking to invalidate this transfer.  ECF

have filed a "Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment" (ECF 31), along with many exhibits.[3]   Plaintiff filed a response in opposition thereto.   ECF 33, 36, and 37.   In addition, plaintiff filed two motions for summary judgment, *see* ECF 29, 35,[4] along with several exhibits.   *See*, *e.g.*, attachments to ECF 33.   No hearing is necessary to resolve the motions.   *See* Local Rule 105.6.

## Background

The parties do not dispute that, while plaintiff was housed at RCI, he worked in masonry and at times could use the library only during evening sessions.[5]   ECF 31, Exhibit 2, ¶ 7, Declaration of Addis M. Kambule; Exhibit 3, Dante Jones's Library Attendance Record; *see also* Exhibit 6, Declaration of Kelly Upole, and Exhibit 7, DOC Request for Administrative Remedy,

---

24.   For reasons apparent herein, this request, which lies outside the scope of the complaint as previously amended, is denied.   Similarly, plaintiff's request to amend his complaint to add as a defendant Wayne A. Webb, the Warden of MCI-H, and to include a condition of confinement claim as to MCI-H (ECF 30), is denied.   Plaintiff is free to file a separate action concerning matters as to MCI-H after exhausting administrative remedies.   He may not, however, seek to address those claims in an action involving RCI.

[3] Defense Exhibit 1, consisting of about 40 pages, includes the relevant administrative record.

[4] In ECF 29, plaintiff seeks summary judgment on the basis that corrections personnel packed up his property, including litigation material, while he attended his post-conviction hearing on the Eastern Shore, then improperly transferred him to MCI-H, disrupting the current litigation.   In ECF 35, plaintiff seeks summary judgment on the ground that counsel for defendants delayed the outcome of this case by requesting extensions of time.   Because these arguments are without merit, the motions are denied.   Plaintiff also sought a default judgment (ECF 23) due to perceived delays in adjudicating his claims.   The motion was denied.   ECF 25. Plaintiff's motion for reconsideration (ECF 26) is also denied.   Moreover, based on my disposition of the defense motion, plaintiff's request for a jury trial (ECF 34) is denied.

[5] Plaintiff indicates his masonry job was assigned on October 25, 2011, and was to begin on November 1, 2011.   ECF 33 at 3 and Exhibit 18.   This statement contradicts defendants' Library Pass Report, which indicates plaintiff worked a masonry job on October 5, 13, 24, 28 and 31.   ECF 3 at 1.   The discrepancy is not material, however.   It appears that plaintiff was granted evening passes on those five days and was allowed to visit the library on at least two occasions during this period.

2/27/12.  There is no dispute that RCI prisoners have access to a legal database called Lexis Nexis, and may request copies of case law through Library Assistance to State Institutions ("LASI") from their case manager.  ECF 31, Exhibit 2, ¶ 6.  DOC records suggest that plaintiff attended library sessions 27 times between October 5, 2011, and March 18, 2012.  Exhibit 3.[6]

On April 26, 2012, plaintiff was assigned to administrative segregation pending transfer from RCI to a medium security institution.  ECF 31, Exhibit 8, Inmate Traffic Sheet; Exhibit 9, Declaration of Jeremy Sowers; Exhibit 10, Second Amended Complaint. The assignment pending transfer occurred after a confidential informant reported that plaintiff made threats against institution staff.  *Id.*  Plaintiff was transferred to Jessup Correctional Institution ("JCI") on May 29, 2012, then transferred temporarily to ECI on May 30, 2012, in order to attend a court appearance the next day.[7]  Plaintiff returned from court in the same manner, arriving back at RCI on June 4, 2012.  On June 11, 2012, plaintiff was transferred to MCI-H.  *Id.,* Exhibit 8.

The uncontroverted facts end there.  Plaintiff contends that defendants denied him access to the library on multiple occasions, even when he possessed valid library passes, including October 5, 24 and 31, 2011, and January 3, 16, 17, 19 and 24, 2012.  ECF 1, ECF 4, and ECF 33, Exhibit 16.  Plaintiff also alleges that he did not receive adequate notice that he was about to be transferred temporarily to attend his post-conviction hearing, resulting in his inability to secure his personal property, which was lost or damaged; he was denied commissary after he returned from that hearing; defendants withheld or delayed posting and receipt of legal mail on January 4

---

[6] Library pass records are kept on a computer system outside of the control of the librarian.  *Id.,* Exhibit 2.  The librarian cannot alter the pass records once they have been entered into the system.  *Id.*

[7] It appears that plaintiff was transferred to ECI in October of 2012.  ECF 38.

and February 28, 2012;[8] and defendants refused to allow him to retain an envelope that contained legal mail.  ECF 1, ECF 4.

Throughout his pleadings, plaintiff suggests these actions were retaliatory in nature. Plaintiff has submitted affidavits from fellow prisoners Eugene Powell, Muhammad Abdullah, Ralph Wilkins, Thomas Wood, Jr., and Tyrone Hollis concerning his inability to use the library, problems obtaining ARP forms, a two-day period wherein mail was withheld, denial of commissary privileges, and the need to obtain LASI materials through requests placed by other prisoners.  ECF 33, Exhibits 17.01 - 17.03, 25 and 26.[9]

Defendants raise an affirmative defense, namely, that plaintiff has failed administratively to exhaust each claim raised herein.  Defendants also contend that plaintiff provides no facts indicating how they were involved in the matters of which he complains.[10]  *Id.*  Both Upole and Mueller state they have never impeded plaintiff's ability to send or obtain mail.  ECF 31, Exhibit 5, Declaration of Officer Mueller at 1; Exhibit 6, Declaration of Officer Upole at 1.  Defendants Morgan and Hershberger contend that at most, they (as well as other RCI officials) have denied

---

[8] In her Declaration, Kelly Upole states she was not at work on February 28, 2012.  ECF 31, Exhibit 6, ¶ 5 and attachment at 3.

[9] The two-day period that mail was allegedly withheld involves a complaint that was not exhausted at the administrative level and will not be examined here. The affidavits shall be considered as evidence supporting plaintiff's claims that he was denied commissary privileges on the day he returned from court, and on occasion could not access the law library or obtain LASI case research.

[10] Plaintiff cites no facts to support his allegations against Officer Woodfall concerning the handling of his requests for administrative remedy, other than to indicate that Woodfall dismissed his claims, at times "with sarcastic comments meant to intimidate and discourage continued pursuit of the proper remedy sought."  Plaintiff considers these dismissals sufficient to constitute violations of due process.  ECF 1 at 6 and ECF 33 at 3.  The Court declines to accept this assessment of Woodfall's handling of plaintiff's claims.

plaintiff administrative remedy complaints, and that denials of such complaints are not tantamount to due process violations.  ECF 1, Exhibits 1-10 and ECF 5, Attachments 1 and 2.

## Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[11]

---

[11] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

---

In any event, in accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff was informed of his right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF 32. As noted, he filed an opposition as well as his own summary judgment motion.

Plaintiff has not filed an affidavit under Rule 56(d).   Moreover, he has filed his own summary judgment motion.  I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The Fourth Circuit has explained: "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (*quoting* former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  However, the court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences

in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.,* 477 U.S. at 323-24).

## Discussion

A.    Failure to Exhaust Administrative Remedies

The court must first consider defendants' claim that plaintiff's complaint must be dismissed in its entirety due to his failure to exhaust administrative remedies. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, *et. seq.*, provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Plaintiff is subject to the strict requirements pertaining to exhaustion of remedies. The PLRA's exhaustion requirement "has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004). If the appeal is unsuccessful, the prisoner must, within thirty days, file an appeal with the Executive Director of the Inmate Grievance Office

("IGO"). *Id.* Of import here, "failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

It is of no consequence that plaintiff is aggrieved by a single occurrence, rather than asserting a claim as to general conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. at 220.

Administrative remedies must, however, be available to the prisoner. This Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Id.* 478 F.3d at 1225; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

As indicated, the PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530. *See Booth v.*

*Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).  Thus, plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

Maryland provides a three-step administrative grievance process for prisoners.  The first step is the filing of a request for administrative remedy with the Warden of the institution (commonly referred to as an ARP).  *Chase*, 286 F. Supp.2d at 529 n. 10.  In the event the ARP is denied, the prisoner must, within ten days, file an appeal with the Commissioner of Correction.  *Id.*, *see* Md. Code, Corr. Serv. Art. § 10-206 and Code of Maryland Regulations ("COMAR"), Title 12 § 07.01.03.

Plaintiff's exhibits[12] demonstrate the following levels of compliance with the exhaustion requirement:

ARP RCI-0833-11     Filed November 15, 2011, alleging library closed October 5, 24, and 31, 2011.

Denied by Warden on November 28, 2011.

---

[12] Unless otherwise noted, all exhibits are attached to ECF 1 in chronological order.

Denied on appeal by Commissioner on February 13, 2012.

No IGO appeal.  Plaintiff claims he received Headquarters denial on February 29, 2012, when any attempt to appeal would be deemed untimely.  ECF 33 at 14.

ARP RCI-0842-11    Filed November 22 and November 28, 2011, alleging library closed evening of November 22, 2011.

Dismissed by ARP Coordinator on November 28, 2011.

Dismissed by Headquarters Coordinator, who requested resubmission and additional information on December 1, 2011. Resubmission not received.  Plaintiff claims he never received the Headquarters response.

Plaintiff claims Headquarters never responded to a resubmission and thus he did not appeal to the IGO.  ECF 33 at 14.

ARP RCI-0869-11    Filed December 6, 2011, alleging inability to attend Tuesday and Thursday library sessions.

Dismissed by ARP Coordinator on December 8, 2011.

Dismissed by Headquarters Coordinator, who requested resubmission and additional information on December 27, 2011. Resubmission not received.

Plaintiff claims he never received a response from Headquarters and thus he did not appeal to the IGO.  ECF 33 at 14.

ARP RCI-0915-11    Filed December 20, 2011, alleging inability to attend regular library session on December 20, 2011, and legal library sessions December 9, 13, and 15, 2011.

Dismissed on December 29, 2011, by Warden, who noted plaintiff attended eight sessions since November 8, 2011, and further noted library may be closed occasionally during the holiday season.

Appeal received on January 31, 2012, and dismissed by Headquarters on March 16, 2012.  ECF 33, Exhibit 31.

No appeal to IGO.   Plaintiff claims he did not received Headquarters' response until April 13, 2012.

ARP RCI-0032-12    Filed January 10, 2012, alleging denial of library access January 3 and 10, 2012.

Dismissed by ARP Coordinator on January 18, 2012, pending resubmission and additional information.

No resubmission or appeal to IGO.

ARP RCI-0050-12    Filed on January 21, 2012, alleging inability to obtain copy of a legal correspondence envelope with a mail date on it.

Dismissed by Warden on January 26, 2012, based on institutional policy (Information Bulletin 14-11).

Appeal to Commissioner denied on March 27, 2012.  ECF 33, Exhibit 34 at 3.  Plaintiff claims he did not receive the denial until May 7, 2012.  No appeal to IGO.

ARP RCI-0056-12    Filed on January 24, 2012, alleging denial of access to library January 3, 17, 19 and 24, 2012.

Denied by ARP Coordinator on January 30, 2012.

Appeal to Headquarters resulted in remand for substantive review, issued February 16, 2012.  Commissioner denied appeal on April 25, 2012.   ECF 33, Exhibit 31-A.   Envelope suggests Commissioner's denial was not sent to plaintiff until June 7, 2012, reaching prison mail room  June 14, 2012.  ECF 33, Exhibit 28.

No appeal to IGO.

ARP RCI-0079-12    Filed on February 8, 2012, alleging lack of access to copy machine in library for legal materials.

Denied by Warden on February 15, 2012, who indicated case managers must do copy work.

Appeal to Commissioner denied on March 16, 2012.  ECF 33, Exhibit 33.  Plaintiff claims he did not receive the denial.  ECF 33 at 14.

ARP RCI-XXXX    Copy of request signed by Officer Muller, dated February 22, 2012, alleging February 15, 2012 failure to notify plaintiff that he would be transported that day, rather than on day of court appearance scheduled for February 17, 2012.  (ECF 1, Exhibit 9).

|  | Request does not appear to have been developed by corrections staff as an ARP complaint. |
|---|---|
| ARP RCI-0098-12 | Filed with Commissioner on March 6, 2012, accusing Warden of covering up Upole's tampering with outgoing mail. |
|  | Commissioner denied claim on April 25, 2012, noting mail issue arose during plaintiff's court date "pack up" on February 15, 2012. ECF 33, Exhibit 35. |
|  | No IGO appeal filed.  Plaintiff claims he did not receive the Commissioner's decision until June 5, 2012.  ECF 33 at 14. |
| ARP RCI-0100-12 | Filed with Headquarters/Commissioner on March 6, 2012, alleging denial of commissary visit on February 23, 2012, based on racism and retaliation. |
|  | Denied by Commissioner on April 25, 2012, with notation that plaintiff did get to use the commissary on February 28, 2012.  ECF 33, Exhibit 36. |
|  | No IGO appeal taken.  Plaintiff claims he did not receive Commissioner's response until May 16, 2012. |
| ARP RCI-0101-12 | Filed on February 23, 2012, alleging retaliation based on denial of commissary visit after returning from court |
|  | Dismissed February 27, 2012. |
|  | Envelopes suggest some type of appeal taken to Commissioner (ECF 33, Exhibit 27). |
| ARP RCI-0145-12 | Filed March 20, 2012, alleging Kambule denied access to local and federal rules of civil procedure. |
|  | Dismissed by Warden May 4, 2012, who noted prisoner can make request through LASI. |
|  | Appeal to Commissioner dismissed for procedural reasons and plaintiff told to resubmit and provide additional information ECF 33, Exhibit 37.  Plaintiff indicates he received the decision on July 8, 2012.  ECF 33 at 15. |
|  | No apparent resubmission or IGO appeal. |

ARP RCI-0207-12    Filed on April 22, 2012, alleging Upole deliberately closed cell door on arm.

Dismissed on May 23, 2012 by Warden, who found no evidence to support claim.

No apparent Headquarters/Commissioner or IGO appeal. ECF 33, Exhibit 39.

ARP RCI-0208-12    Filed on April 22, 2012, alleging Upole refusing to allow plaintiff into his cell.

Dismissed on May 23, 2012 by Warden, who found no evidence to support claim.

No apparent Headquarters/Commissioner or IGO appeal. ECF 33, Exhibits 40-41.

Plaintiff affirmatively failed to appeal to the IGO in ARP Nos. RCI-0833-11 (library closed October 5, 24 and 31, 2011); RCI-0915-11 (regular library closed December 20 and legal library closed December 9, 13 and 15, 2011); RCI-0032-12 (denied library privileges January 3 and 10, 2012); RCI-0050-12 (unable to keep copy of legal envelope); RCI-0056-12 (denial of library privileges January 3, 17, 19 and 24, 2012); RCI-0098-12 (Upole tampering with outgoing mail); RCI-0100-12 (denial of commissary on February 23, 2012); RCI-0145-12 (denial of access to local and federal procedural rules), RCI-0207-12 (cell door closed on arm); and RCI-0208-12 (Upole would not allow him into his cell). As noted above, plaintiff indicates he did not appeal to the IGO on several occasions because the Commissioner's decision was not rendered in a timely manner. This argument is specious at best; in most instances, plaintiff received the decision within thirty days after signature date and could have appealed to the IGO within the thirty day limitations period. In other instances, he could have filed an appeal to the IGO and provided information as to the date he received the Commissioner's response. Plaintiff provides

no justification for other failures to seek final review through the IGO.  Because of this failure to exhaust, his claims concerning these claims will not be examined on the merits.

The court will, however, examine the remaining claims, based on plaintiff's statements that he never received final determinations by the Commissioner (and thus had no basis for appeal to the IGO).  These claims include inability to use the legal library on November 22, 2011, and on the Tuesday and Thursday prior to December 6, 2011; denial of access to a photocopy machine; the lack of notice and sufficient time to "pack up" prior to transportation to ECI for a court hearing; and denial of commissary privileges after returning from the court appearance.  Plaintiff's claim of retaliatory transfer based on his litigation history also shall be examined.

B.      Access to Courts

Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  Nevertheless, what the Supreme Court said in *Lewis v. Casey*, 518 U. S. 343, 355 (1996), is pertinent:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355).  In short, to obtain legal

standing to raise a violation of *Bounds,* plaintiff must show a negative impact on his ability to litigate. *Lewis*, 518 U.S. at 349.

It is apparent that plaintiff regularly received passes to attend legal library sessions, and attended many of those sessions. On some occasions, he could not visit the legal library, either because the library was closed or because corrections personnel did not allow him to attend library sessions. It is also apparent that while plaintiff did miss occasional opportunities to use the legal library, he was not barred from all access to the legal library, and in fact attended legal library sessions with great frequency.

Plaintiff must show actual injury as a result of missed opportunity to visit the legal library. He alleges that he was denied local rules relating to state post-conviction procedures as well as federal rules of civil procedure sought in connection with his action against Harford County Detention Center personnel. The State of Maryland has few local court rules, and none, to my knowledge, directly related to a challenge to a criminal sentence or conditions of confinement.

In *Jones v. Maryland*, Criminal No. 22-K-10-0933, plaintiff was convicted in the Circuit Court for Wicomico County, Maryland of first-degree assault and related charges. He was represented on direct appeal by the Office of the Public Defender. Against counsel's advice, plaintiff dismissed his pending direct appeal in order to pursue post-conviction remedies. ECF 33, Exhibits 14.01-14.07. Counsel from the Public Defender's Collateral Review Division evaluated the strength of plaintiff's post-conviction petition and found no grounds to support a claim of ineffective assistance of counsel. Although plaintiff chose to proceed to post-conviction on his own, assistance of stand-by counsel was offered. *Id.,* Exhibit 14.08. Plaintiff's federal civil rights claim, *Jones v. Walter, et al.,* Civil Action No. ELH-11-3607 (D. Md.), was well

presented.  Although plaintiff did not prevail, the undersigned found no reason to believe that a lack of library access affected the outcome of the case, which was fact-driven.  The purpose of the local rule plaintiff sought to read, LR 104.4 (D. Md.), was explained in this court's Order of January 30, 2012, in the *Walter* case, and plaintiff suffered no adverse consequences as a result of his inability to read the rule in its entirety.

As stated above, the right of access to courts is not the right to access any and all legal material whenever the inmate desires.  *Lewis*, 518 U.S. at 554.  During the period that plaintiff was housed in RCI, he attended many library sessions and checked out large amounts of material.  In addition, plaintiff admits he received numerous printout copies of cases and all records show plaintiff was allowed copies through case management.  Plaintiff has failed to demonstrate actual injury based on occasional inability to use the legal library or to have direct access to the photo copy machine.  As for plaintiff's complaint that he lacked access to a copy machine and had to take notes on a legal pad by hand, taking notes on a legal pad does not constitute an impairment of a constitutional right.  The fact that MCI-H, a medium security prison, permits prisoners access to a copy machine, ECF 33, Exhibit 22 and Exhibit 33 at 6, does not establish that RCI, a medium-II level prison, must follow the same protocol.  Such complaints fail to state a claim of denial of access to courts.

C.      Property "Pack Up"

Plaintiff's complaint that he had no time to pack up his property prior to his temporary transfer for a court appearance on the Eastern Shore fares no better.  Plaintiff believes the failure to give him more than 10 minutes to pack prior to transportation "could have been…part of a plan to plant contraband within [his] property…in order to [give him] an infraction or in retaliation for [his] filing grievances…about denial of library access."  ECF 1, Exhibit 9.  There

is no indication, however, that these problems occurred, nor even a suggestion that plaintiff's property was damaged in any way.[13]

Moreover, to the extent that written directives were not followed concerning the pack-up, the adoption of procedural guidelines does not give rise to a liberty interest.  Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met.  *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  Put another way, the failure to follow regulations does not, in and of itself, result in a violation of due process.  *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).

D.     Denial of Visit to Commissary

Plaintiff complains that he was denied access to the prison commissary on February 23, 2012, following his return from a court appearance on the Eastern Shore.  There is no indication that this single incident led to a deprivation of constitutional dimension.  Accordingly, the claim shall not be addressed in the context of a civil rights lawsuit.  Plaintiff's second ARP complaint concerning this incident, alleging that the denial of commissary access on February 23, 2012, was retaliatory and racist, was examined by the Commissioner in ARP RCI-0100-12.   As plaintiff did not appeal the Commissioner's findings to the IGO, the claim based on racism and retaliation will not be examined here.

E.     Retaliatory Transfer

A classification decision or a transfer from one prison facility to another does not implicate a protected liberty interest or state a claim under § 1983.  *See Meachum v. Fano*, 427

---

[13] Even if the property had been lost or stolen, plaintiff had access to an adequate post-deprivation remedy under state law.  *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U. S. 327 (1986); *Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).

U.S. 270 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987).  A prisoner has no

liberty interest in being housed in any particular facility, *see Olim v. Wakinekona*, 461 U.S. 238,

244-45 (1983), and is not entitled as a matter of constitutional law to be housed with any

particular security classification or at a particular prison, absent detailed "state law regimes

which in the end effectively say to inmates: 'If facts A, B, and C are established in an appropriate

fact-finding process, you are thereupon legally entitled to a more favorable security or custody

classification…or are legally entitled not to be placed in a less favorable classification than you

now have.'" *Slezack v. Evatt*, 21 F. 3d 590, 595 (4th Cir. 1994).

       In order to prevail on a claim of retaliation, plaintiff must show that a retaliatory act was

taken in response to the exercise of a constitutionally protected right or that the act itself violated

such a right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  The Fourth Circuit has

explained:

> Retaliation, though it is not expressly referred to in the Constitution, is
> nonetheless actionable because retaliatory actions may tend to chill
> individuals' exercise of constitutional rights.  *Perry v. Sindermann,* 408
> U.S. 593, 597 (1972).  Where there is no impairment of the plaintiff's
> rights, there is no need for the protection provided by a cause of action
> for retaliation.    Thus, a showing of adversity is essential to any
> retaliation claim.

*American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780,

785 (4th Cir. 1993).  Taken in the prison context, such claims are treated with skepticism

because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense

that it responds directly to prisoner misconduct.'  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th

Cir. 1996) (quoting  *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

       Mr. Jones claims the transfer occurred in order to frustrate his ability to pursue his

lawsuits.  ECF 31, Exhibit 10.  Case Management Specialist Jeremy Sowers, however, avers the

transfer occurred after a confidential informant told staff that plaintiff made threats against the institution and its staff.  *Id.,* Exhibit 9.  Plaintiff was removed from administrative segregation status immediately after the transfer.  *Id.,* Exhibit 9 at 2.  In fact, plaintiff was transferred to a prison of equal or lower security status, and one that offered photocopier access.

Plaintiff's bald claim of retaliation based on his placement on administrative segregation pending transfer from one medium security prison to another simply lacks evidentiary support and thus fails.  A claim that alleges retaliation in wholly conclusory terms may be dismissed on the pleadings alone.  *See Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (stating that conclusory allegations of retaliation insufficient to state claim).

F.      Supervisory Liability of the Warden and Assistant Warden

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

(2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).  Plaintiff provides no factual basis for imposing liability on Warden Hershberger, other than the fact that Hershberger and Morgan reviewed and denied one or more of plaintiff's ARPs.  Such decision-making is an appropriate undertaking for a prison warden and assistant warden.  Under the facts set forth here, such conduct provides no basis for recovery favoring plaintiff.

For the reasons articulated above, summary judgment is granted in favor of defendants. A separate Order shall be entered in accordance with this opinion.

December 10, 2012                              _____/s/_____
                                              Ellen Lipton Hollander
                                              United States District Judge